UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| GRADETECH, INC., and SAM RIVINIUS<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN JOSE, et al.,<br><br>Defendants. | Case No. 19-cv-06157-NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING LEAVE TO AMEND**<br><br>Re: Dkt. No. 17 |

This case arises out of an ongoing dispute between the City of San Jose and contractor Gradetech, Inc. over a bike park construction project. Gradetech and its owner, Sam Rivinius, bring claims under 42 U.S.C. § 1983 against the City of San Jose and its employees for First Amendment retaliation and due process violations, and also seek a writ of mandamus reversing their disqualification from a later contract. Defendants move to dismiss all claims under Rule 12. The Court FINDS that Plaintiffs adequately alleged their First Amendment retaliation claim, their due process claim for deprivation of property, and their claim for a writ of mandamus and DENIES the motion to dismiss those claims. The Court FINDS that Plaintiffs have not alleged sufficient facts to state a claim for deprivation of their liberty based on either their right to bid on City contracts or their reputational harm. The Court GRANTS the motion to dismiss that claim. Finding that the plaintiffs could allege additional facts to cure, the Court GRANTS LEAVE TO AMEND. Finally, the Court DENIES the defendants' motion to dismiss based on qualified immunity.

## I. Background

### A. Facts Alleged in the First Amended Complaint

Plaintiffs allege the following facts in the First Amended Complaint at Dkt. No. 15. These are factual allegations, not findings by the Court. For the purposes of this motion, the Court assumes these facts are true. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

#### The Lake Cunningham Bike Park Construction Project

Gradetech, Inc. is a licensed California contractor that has worked with the City of San Jose and other government agencies in the Bay Area on many occasions since its founding in 1991, including over 600 government contracts and 35 projects with San Jose. FAC ¶¶ 5, 63, 69. In March 2016, Gradetech entered into a contract with the City of San Jose for the Lake Cunningham Bike Park Construction Project. *Id* ¶ 16. The Project was set to begin in May of that year. *Id*. ¶ 17. Throughout the Project, consultants and staff from the City of San Jose caused cost increases and substantially delayed Project completion by enlarging the Project's features from what was shown on the plans. *Id.* ¶ 19. On September 1, 2016, Gradetech submitted a Notice of Potential Claim to defendant Chris Mastrodicasa, the Associate Landscape Developer for the City, based on significant changes in grading quantities. *Id.* ¶¶ 10, 19. Plaintiffs expressed concerns about both the mismanagement of the Project and about safety issues, but the City ignored and rebuffed their concerns. *Id.* ¶¶ 19, 20, 51.

#### The State Court Lawsuit

On November 15, 2017, Gradetech submitted a claim for $1.85 million in additional amounts due under the Cunningham Project contract. *Id*. ¶ 21. This included a Daily Extra Work Report. *Id*. On January 26, 2018, Gradetech filed a government claim against the City, which was denied. *Id.* ¶ 23. In March 2018, Gradetech filed a lawsuit against the City in Santa Clara County Superior Court for breach of contract based on the City's failure to compensate Gradetech for its work on the Project. *Id*. ¶ 24. In a March 2019 deposition for that case, the City confronted plaintiff Sam Rivinius (the owner of

Gradetech) about payroll data discrepencies in the Daily Extra Work Report.  *Id*. ¶ 30.

Other Projects

In January 2019, the City sought bids from contractors for Minor Street Projects. *Id*. ¶ 25.  Gradetech submitted a bid.  *Id*. ¶ 28.  Its application exceeded minimum passing scores and passed all pass/fail requirements.  *Id*. ¶ 29.  In May 2019, Gradetech received a letter from the City's Department of Public Works entitled "Notice of Disqualification," stating that Gradetech had been disqualified from the Minor Street Projects contractor pool.  *Id*. ¶ 31.  The letter said that Gradetech's "submittal was timely, responsive, and scored above the minimum needed points," but that "Gradetech [was] not qualified because it submitted materially incorrect documentation of compensation in the . . . Lake Cunningham Bike Park contract."  *Id*.  A footnote of the letter stated: "Gradetech has filed a lawsuit against the City seeking more than $1,853,000 in additional compensation.  The lawsuit is currently pending."  *Id*. ¶ 32.  The letter invited Gradetech to request in writing a hearing on the disqualification within 10 business days, and Gradetech did so.  *Id*. ¶ 31.

Also in May 2019, defendant Matthew Cano, the City's Public Works Director, abruptly terminated the City's 2018 General Engineering Construction for Transportation Projects contract with Gradetech without warning or explanation.  *Id*. ¶ 33.  In June 2019, Gradetech submitted the lowest bit and satisfied all bidding requirements for the City's Coyote Creek Trail Project.  *Id*. ¶ 38.  The only other bidders submitted higher bids and failed to satisfy all requirements.  *Id*.  Instead of awarding the contract to Gradetech, the City extended the other bidders' deadline by 90 days—but did not extend Gradetech's— and withheld awarding the contract.  *Id*.

The Hearing on the Minor Street Projects Disqualification

The hearing that Gradetech requested on its disqualification from the Minor Street Projects contract took place on June 21, 2019.  *Id*. ¶ 34.  Defendant Jim Ortbal, San Jose's Deputy City Manager, served as the Hearing Officer.  *Id*.  Defendant Matt Loesch, San Jose's Assistant Direct of Public Works, served as the Hearing Administrator.  *Id*. ¶¶ 10, 34.  Mr. Rivinius appeared for Gradetech and Defendant David French of San Jose's

3

Public Works Department appeared for the City. *Id*. ¶ 34. At the hearing, Mr. Rivinius "took responsibility for the problem" with the discrepancies in the Daily Work Report from the Lake Cunningham Bike Park Construction Project and said "that he would correct it." *Id*. Rivinius "admitted he was mistaken in certifying incorrect employee payroll hours as part of his government claim" and has since "withdrawn and corrected those mistakes." *Id*. ¶ 65.

On July 1, 2019, Jim Ortbal issued a letter affirming Gradetech's disqualification from the Minor Street Projects. *Id*. ¶ 36. The letter acknowledged that Gradetech had scored above the required number of points and had successfully completed 35 jobs for the City in the past. *Id*. ¶ 37. It stated that the reason for the disqualification was the "contradictory, certified payroll records submitted by Gradetech in relation to the Lake Cunningham project." *Id*. It also included a footnote identical to that of the May disqualification letter referring to the state court breach of contract lawsuit seeking more than $1,853,000 in additional compensation. *Id*. ¶ 36.

Debarment

"At some point after Gradetech submitted its Notice of Potential Claim" in September 2016, defendant Chris Mastrodicasa "began 'trying to work on' getting Gradetech debarred from all City projects." *Id*. ¶ 49. Other "senior staff at the City," including the other defendants in this case, "also began to scheme about Gradetech's debarment." *Id*.

In August 2019, Gradetech received a letter from the City entitled "Notice of Debarment." *Id*. ¶ 39. The letter included an investigative report dated August 12, 2019, authored by Public Works Director Matthew Cano. *Id*. The report recited the events leading up to the Minor Street Projects contractor pool disqualification and "appeared to rely on these events, among other things, in support of its recommendation for debarment." *Id*. Gradetech made a written request for a hearing on the debarment. *Id*. Gradetech also made a public records request to the City under the California Public Records Act seeking any records of contractor debarment since the relevant ordinance was passed 21 years

prior. *Id*. ¶ 40. The City responded that it had no such records, indicating that no contractor had ever been debarred under the ordinance. *Id*. ¶ 40. However, other contractors have submitted claims with reporting errors and other contractors have also sought additional compensation for extra work performed, in the same way that Gradetech had in the Cunningham Project. *Id*. ¶ 64.

In order to bid on government contracts, bidders must disclose whether they have been debarred or are currently subject to debarment investigation. *Id*. ¶ 53. Now Gradetech must note its pending debarment investigation on bidding applications. *Id*. This has the effect of "blackball[ing] Gradetech and Rivinius from contracts" and has "blacklist[ed] them from future contracting activities with the City and other government agencies and municipalities." *Id*. ¶ 61. Gradetech's previously strong reputation in the community has been damaged. *Id*. ¶ 65.

### B. Procedural History

Plaintiffs filed this case in September 2019. Dkt. No. 1. Defendants moved to dismiss, and the Court denied the motion as moot because Plaintiffs subsequently filed an amended complaint. Dkt. Nos. 11, 15, 16. Defendants now move to dismiss all claims in the First Amended Complaint. Dkt. Nos. 15, 17.

The FAC brings three claims under 42 U.S.C. § 1983 against defendants Jim Ortbal, David French, Chris Mastrodicasa, Matthew Cano, and Matthew Loesch: (1) First Amendment retaliation; (2) deprivation of Gradetech's protected liberty interests; and (3) deprivation of Gradetech's protected property interest. Dkt. No. 17. The FAC also seeks a writ of mandamus, or in the alternative administrative mandamus, under California Code of Civil Procedure §§ 1085 or 1094.5 on behalf of Gradetech and against the City of San Jose, Jim Ortbal, and David French.

All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 7, 10, 23.

## II. Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

5

sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill*, 80 F.3d at 337–38. The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

**III. Discussion**

**A. Evidentiary Objections**

On a motion to dismiss, the Court may take judicial notice of documents that are incorporated by reference in the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Along with their motion to dismiss, Defendants filed a request for judicial notice consisting of the May 6, 2019, Notice of Disqualification; July 1, 2019, letter from the City to Gradetech affirming the disqualification; and the August 2019 Notice of debarment. Dkt. No. 18, Exs. 1, 2, 3. All of these documents are referenced in the First Amended Complaint, as described above. Plaintiffs object to the Court's consideration of these materials because they are beyond the pleadings. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); Dkt. No. 32. Plaintiffs argue that the statements contained in the exhibits are hearsay and they dispute the truth of many of the statements. However, Plaintiffs have no objection to the Court taking notice that the documents exist. Dkt. No. 32 at 3. The Court finds no need to consider the truth of the matters asserted within the documents to decide this motion. As such, the Court only takes notice of the existence of

the documents and not of their contents.

The request for judicial notice also includes two portions of the City of San Jose's Municipal Code. Dkt. No. 18 at Exs. 4, 5. Defendants clarify in their response to Plaintiffs' objections that these were provided simply for ease of reference because the Court need not rely on judicial notice principles to reference statements of law. *See Hernandez v. City of San Jose*, Case No. 16-cv-03957-LHK, 2016 WL 5944095, at *5 n.1 (N.D. Cal. Oct. 13, 2016) (taking notice of provisions of the San Jose Municipal Code as indisputably accurate sources and as "legislative facts"). The Court agrees that it may reference the Municipal Code without a request for judicial notice.

**B. Plaintiff Sam Rivinius's Standing**

To have standing to sue, a plaintiff must have suffered an injury in fact and there must be a causal connection between the injury and the defendant's alleged conduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). These are not "mere pleading elements but rather an indispensable part of the plaintiff's case"—but on a motion to dismiss, the factual allegations of injury resulting defendant's conduct are enough to suffice. *Id.* A stockholder or officer of a corporation may not bring an action on his own behalf based on alleged harm to the corporation. *Erlich v. Glasner*, 418 F.2d 226 (9th Cir. 1969). A shareholder only has standing if he has been injured directly and independently from the corporation. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1057 (9th Cir. 2002). Personal economic injury that results from harm to the corporation does not qualify as a direct and independent injury. *Direct List, LLC v. Kessler*, 2018 WL 3327802, at *2 (S.D. Cal. 2018).

Sam Rivinius is the President and sole owner of Gradetech. FAC ¶ 6. Defendants argue that he lacks standing to bring this case. Motion at 17:24–28. Plaintiffs respond that Rivinius has standing because he was harmed directly and independently from Gradetech. Opp. at 2:21–28. Plaintiffs argue that "Rivinius has alleged deprivations of rights and liberty interests to himself as an individual which resulted in harm." *Id.* They point to no specific examples. The Court can find only one: the injury to Rivinius's reputation that

7

Plaintiffs claim resulted from the City's accusations that Rivinius submitted false payroll data.  FAC ¶ 65 ("The City's false and injurious statements are defamatory in nature and ruinous to the reputation of Gradetech *and Rivinius*") (emphasis added).  However, as discussed below, the Court GRANTS the motion to dismiss this claim and GRANTS plaintiffs' LEAVE TO AMEND it.  If Plaintiffs fail to successfully amend this claim and fail to allege any other injury to Rivinius, he will be dismissed from the case.

### C.  Claims Under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) conduct committed by a person acting under color of state law and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011).

#### 1.  First Amendment Retaliation

If a contractor complains of First Amendment retaliation by a government agency under § 1983, courts analyze the claim the same way as if the claim were raised by an employee of the agency.  *Alpha Energy Savers, Inc. v. Hansen*, 381 F.2d 917, 923 (9th Cir. 2004).  This requires the plaintiff contractor to allege: (1) that it engaged in expressive conduct that addressed a matter of public concern; (2) that government officials took an adverse action against it; and (3) that its expressive conduct was a substantial or motivating factor for the adverse action.  *Id*.  If the plaintiff makes this showing, the defendant is not liable if it demonstrates that either (a) legitimate administrative interests in promoting efficient service-delivery and avoiding workplace disruption outweigh the contractor's free speech interests; or (b) the government would have taken the same actions in the absence of the contractor's expressive conduct.  *Id*.  The parties do not dispute that the City took adverse action against Gradetech in the form of disqualification and pending debarment.

##### a.  Expressive Conduct

The Ninth Circuit has "adopted a liberal construction of what an 'issue of public concern' is under the First Amendment."  *Id*. at 710 (internal quotations omitted).  But expressive conduct made by an employee or contractor does not constitute a matter of

public concern when the expression consists of strictly matters of personal interest. *Gearhart v. Thorne*, 768 F.2d 1072, 1073 (9th Cir. 1985). Speech must be of broader societal concern than merely relating to a dispute between the contractor and government. *Desrochers v. City of San Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009). "It has not been clearly decided that a lawsuit is a constitutionally protected 'petition' entitled to First Amendment protection," though some courts have recognized lawsuits as protected expression. *United States v. Brown*, 223 F. Supp. 3d 697, 701, n.6 (N.D. Ohio 2016); *see, e.g.*, *Manning v. Powers*, 381 F. Supp. 3d 953, 963 (C.D. Cal. 2017) and *Banuelos v. Sandoval*, 2014 WL 7433740, at *5 (E.D. Cal. Dec. 31, 2014). Whether speech addresses issues of public concern depends on its "content, form, and context"—most importantly, its content. *Connick v. Myers*, 461 U.S. 138, 147–48 (1983); *Johnson v. Multnomah County*, 48 F.3d 420, 424 (9th Cir. 1995).

Here, Plaintiffs allege expressive conduct in their complaints to the City throughout their work on the Lake Cunningham Bike Park Construction Project leading up to, and including, their suit against the City in state court for breach of contract. Many of Plaintiffs' expressions related only to the financial and managerial dispute between the entities: Plaintiffs describe that they "cautioned City its consultants were causing cost increases and substantially delaying Project completion" and "requested City take a stronger role in managing project staff and consultants." FAC ¶¶ 19. Plaintiffs' concerns about mismanagement were aimed at "prevent[ing] large cost increases" and "disruptions" to the project. *Id.* ¶ 51. These cost increases led to the breach of contract suit. FAC ¶¶ 16, 19, 21. On their own, these allegations appear to consist of private matters between Gradetech and the City. But the FAC additionally alleges that "[o]n or about September 20, 2017, Gradetech warned the City that there were safety concerns associated with the Project" and that "[t]he City rebuffed Gradetech's concerns." FAC ¶ 20. The safety of the Project could be a matter of public, not only private, concern. Read in the light most favorable to the Plaintiffs, the Court FINDS that the alleged expressive conduct constituted a matter of public concern insofar as the complaints related to the safety of the Project.

### b. Substantial Motivation

At the pleading stage, a plaintiff bringing a retaliation claim must allege facts that plausibly suggest a retaliatory motive for adverse action. *Koala v. Khosla*, 931 F.3d 887, 905 (9th Cir. 2019). Some factors that may suggest that expressive conduct was a substantial motivator in the government's adverse action include: (1) proximity in time between the speech and the adverse action, (2) the government's expressed opposition to the speech, and (3) whether the government's proffered explanations for the adverse action were false or pretextual. *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751–52 (9th Cir. 2001).

Here, the FAC describes Gradetech's complaints about the Project starting with a September 1, 2016, notice of potential claim for the significant changes in grading quantities direct by Project staff. FAC ¶ 19. Then, Gradetech warned the City about safety concerns in September 2017. *Id.* ¶ 20. In November 2017, Gradetech submitted a claim for the $1.85 million it believed it was owed for additional work on the Project. *Id.* ¶ 21. In January 2018, Gradetech filed a government claim, and in March 2018, Plaintiffs filed suit in state court. *Id.* ¶¶ 23, 24.

The adverse actions alleged in the FAC include the City's failure to pay amounts due on the Cunningham Project, the City's decision not to qualify Gradetech for the 2019 Minor Street Projectss, the City's May 2019 termination of Gradetech's contract for General Engineering Construction for Transportation Projects, the City's failure to consider Gradetech for the Coyote Creek Trail Project, and the City's later notice of pending debarment proceedings.[1]

---

[1] Defendants argue that alleged adverse actions in the form of debarment or unawarded contracts are not yet ripe because the City has "not yet debarred Gradetech or made any final decision to disqualify it on other contracts." Opp. at 12, n.2. The Court disagrees regarding debarment because Gradetech has alleged harm incurred by the very initiation of debarment proceedings. There is no reason why the proceedings must be complete before they qualify as an adverse action. Similarly, Defendants admit that the award of the other contracts makes no difference here because with or without the other contracts, the retaliation claim "turns on the same core of allegations relating to Gradetech's submission

The Complaint is not completely clear as to the timeline of the debarment process. It alleges with no dates that defendant Mastrodicasa, "working in concert with other persons acting on the City's behalf, sought Gradetech's debarment . . . despite lacking any legitimate basis to do so" and, again with no dates, that "Mastrodicasa and City inspector, Chris Dominguez, conspired through email with Gradetech's subcontractor surreptitiously to gain information it could use against Gradetech." FAC ¶ 18. Overall, though, the timeline alleged shows ongoing complaints by Plaintiffs beginning in 2016 and into 2018, and adverse actions by Defendants throughout almost that entire period and up to present day. This includes, for instance, the City's failure to pay amounts due for the Cunningham Project just two months after Plaintiffs' alleged safety complaints in September and November 2017. FAC ¶¶ 20, 21.

The FAC describes that the City repeatedly ignored and rebuffed Plaintiffs' concerns, though it does not describe any other explicit statements made in opposition to Gradetech's speech. FAC ¶¶ 19, 20, 51. The City's proffered explanation for its adverse actions is the erroneous payroll data that Gradetech submitted in association with the Cunningham Project. Opp. at 13. The FAC at least suggests that this explanation is false and pretextual by accusing City actors of conspiring against Gradetech with no legitimate basis even prior to the submission of the false data. FAC ¶¶ 19, 30, 49. Plaintiffs allege that the City failed to acknowledge the payroll data errors until March 2019, after some of the adverse actions had already taken place. *Id*. ¶ 30.

The Court FINDS that these factors support an inference of retaliation at this stage of the proceedings.

### c. Exceptions to First Amendment Liability

Defendants argue that two exceptions apply here such that they are not liable for First Amendment retaliation. First, they argue that their reasons for discontinuing their contractual dealings with Gradetech outweigh the public's interest in plaintiffs' expressive

of false pay data and the City's subsequent disqualification determination." *Id*.

conduct. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); Opp. at 12. Second, they argue that they would have undertaken the same disqualification of Gradetech regardless of the expressive conduct because the disqualification was based on the false payroll data. Opp. at 15.

The Court FINDS that neither exception applies here at this stage of the proceedings. As an initial matter, these exceptions—essentially defenses—to liability place the burden of proof on Defendants. *Riel v. City of Santa Monica*, 2014 WL 12694159, at *6 (C.D. Cal. Sept. 22, 2014). On a motion to dismiss, the Court must read all facts alleged in the light most favorable to the plaintiffs. This standard means that the proffered exceptions must apply even under Plaintiffs' view of the facts. They do not. First, Plaintiffs of course allege that their warnings about safety and mismanagement were of immense importance and that the City's desire not to contract with them lacked any "legitimate basis." FAC ¶ 18. Under Plaintiffs' facts, then, the City's interest does not outweigh the public's interest in their expressive conduct. Next, while the City argues that it would have inevitably "discovered that Gradetech submitted false data and was therefore manifestly unqualified to do further contractor work for the City," this speculative conclusion is wholly unsupported by any allegation in the FAC. Opp. at 14.

Having found that the plaintiffs adequately alleged expressive conduct on a matter of public concern, and adverse action taken by the City that was substantially motived by the expressive conduct, the Court DENIES the motion to dismiss the claim for First Amendment Retaliation under 42 U.S.C. § 1983.

### 2. Deprivation of Substantive Due Process

Plaintiffs allege that Defendants deprived them of liberty and property, clarifying in briefing that they bring these as substantive due process claims under the Fifth and Fourteenth Amendments.[2] Opp. at 1. To plead a claim for deprivation of substantive due

---

[2] The FAC does not state whether Plaintiffs' claim is for violation of substantive due process rights or procedural due process rights. Defendants address both possibilities in their briefing, but the Court only discusses substantive due process here because in their Opposition, Plaintiffs frame their claims as brought only under substantive due process.

process, a plaintiff must allege that the state deprived him or her of a fundamental right. *See Raich v. Gonzalez*, 500 F.3d 850, 862 (9th Cir. 2007). A fundamental right is one that is "[d]eeply rooted in this Nation's history and tradition," such as the rights "to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to refuse unwanted lifesaving medical treatment." *Washington v. Glucksburg*, 521 U.S. 702, 721 (1997). This also includes the right to seek one's chosen profession. *Engquist v. Oregon Dept. of Ag.*, 478 F.3d 985, 996–97 (9th Cir. 2007).

### a. Liberty

The liberty interests that Plaintiffs allege to have lost are their right to bid on government contracts and their reputational harm.

### i. Right to Bid

First, as to the right to bid on government contracts, Plaintiffs must allege that the government's deprivation of their liberty amounted to "a complete prohibition of the right to engage in a calling, and not [a] sort of brief interruption." *Id*. at 997 (citing *Conn v. Gabbert*, 526 U.S. 286, 298–92 (1999)). Substantive due process claims for a public employer's violations of occupational liberty are limited to "extreme cases, such as a government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure." *Id*. at 997–98 (internal quotations omitted). The liberty interest in pursuing a chosen occupation "has been recognized only in cases where (1) a plaintiff challenges the rationality of government regulations on entry to a particular profession" or (2) "a state seeks permanently to bar an individual from public employment." *Guzman v. Shewry*, 552 F.3d 941, 954 (9th Cir. 2009).

While FAC uses the words "blacklist" and "blackball," this conclusory language is nor borne out by the facts alleged. FAC ¶¶ 61–63. Plaintiffs' facts do not amount to the "extreme" circumstances that warrant a substantive due process claim. *Engquist*, 478 F.3d

at 997.  Plaintiffs allege that the City failed to pay amounts due on the Cunningham Bike project, did not select Gradetech when it bid on other later projects, and initiated debarment proceedings.  FAC ¶¶ 61–63.  Plaintiffs allege that "[g]overnment agencies and municipalities routinely require contractors to certify that they have not been previously debarred or disqualified from government contracting opportunities," including a typical requirement that bidders "disclose whether, at the time their bid is submitted, they have been notified that they are under investigation for debarment."  FAC ¶ 62.  This means that, at most, Gradetech's ability to bid on government contracts is only currently impacted until the debarment proceedings are complete.  If Gradetech is not debarred, there will be no ongoing effect.  If Gradetech is debarred, then this claim may have legs.

As pleaded, none of Plaintiffs' injuries amount to a permanent bar from public contracts or total bar on entry to a profession.  Without more, they have not alleged that Defendants deprived them of their liberty interest in pursuit of chosen occupation.

### ii. Reputation

A plaintiff has a liberty interest in being free from reputational injury.  *Haiping Su v. Nat'l Aeronautics & Space Admin.*, Case No. 09-cv-02838-JW, 2009 WL 10695701, at *7 (N.D. Cal. Dec. 16, 2009) (citing *Paul v. Davis*, 424 U.S. 693, 711–12 (1976).  Defendants argue that a claim for damage to reputation may only be brought as a procedural, not substantive, due process claim.  Reply at 10–11.  The Court agrees that Plaintiffs have not shown how reputation constitutes a fundamental right warranting substantive due process protection.  And moreover, "reputation alone, apart from some more tangible interests such as employment, is [neither] 'liberty' nor 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause."  *Paul*, 424 U.S. at 701.  Procedural due process protections only apply "if the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connection with the termination of employment or the alteration of some right or status recognized by law."  *Erickson v. U.S. ex rel. Dept. of Health and Human Srvs.*, 67 F.3d 858, 862 (9th Cir. 1995).

1    Here, Plaintiffs allege that Defendants harmed Sam Rivinius's reputation by

2    accusing him of perjury—that is, accusing him of submitting the false payroll data

3    associated with the Cunningham Bike Project in a report that Mr. Rivinius signed under

4    penalty of perjury.  FAC ¶ 65.  The problem with Plaintiffs' account is that the "accuracy

5    of the charge" was never contested.  *Erickson*, 67 F.3d at 862.  Rather, the FAC says that

6    Rivinius "admitted he was mistaken in certifying incorrect employee payroll hours as part

7    of his government claim."  FAC ¶ 65.  Rivinius then "withdr[ew] and corrected those

8    mistakes."  *Id*.  Plaintiffs only cite their request for a hearing on their disqualification from

9    the Minor Street Projects as a fact to show that they contested the accuracy of the charge.

10   But it is not clear how requesting the hearing, and then taking "responsibility for the

11   problem" at the hearing, amounts to contesting the accuracy of Defendants' accusation.  *Id*.

12   To state a claim for reputational injury, Plaintiffs must plead facts to show how they

13   disputed the accuracy of the charge.

14                              **b.  Property**

15   Plaintiffs allege that they had a right to property in the government contracts of

16   which they have been deprived.  While a contract with the state may create a

17   constitutionally protected property interest, this right does not clearly extend to the right to

18   bid on future potential contracts that the contractor has not already won.  *Bd. of Regents of*

19   *State Colleges v. Roth*, 408 U.S. 564, 575–76 (1972); *San Bernardino Physicians' Servs.*

20   *Med. Grp., Inc. v. San Bernardino Cty.*, 825 F.2d 1404, 1408 (9th Cir. 1987).  The

21   contract's terms as well as statutory authority may create entitlement to a contract.  *Blantz*

22   *v. California Dep't of Corr. & Rehab.*, 727 F.3d 917, 922 (9th Cir. 2013); *San Bernardino*,

23   825 F.2d at 1408.

24   The FAC describes the following contracts: the Cunningham Project that the City

25   awarded to Gradetech; the Minor Street Projects contract from which Gradetech was

26   disqualified; the Coyote Creek Trial contract for which Gradetech submitted the lowest bid

27   but for which the City had not selected a contractor; and the General Engineering

28   Construction for Transportation Project, which the City "terminated without explanation."

FAC ¶ 33.  The FAC also vaguely references future contracts with both the City of San Jose and other municipalities.  FAC ¶ 61, 62.

The terms of the alleged existing contracts—which are not before the Court at this time—may shed light on whether Gradetech had legitimate entitlement to them.  In particular, the General Engineering Construction for Transport contract that was terminated while Gradetech still held it could form the basis of a property right.  The defendants' briefing on this question relies on the Court taking judicial notice of not only the existence but also the content of multiple documents.  Motion at 18.  The Court has only taken notice of the existence of these documents, not their contents.  The Court does not consider the content of those materials here.  While the plaintiffs have not shown that they had a property interest in every contract referenced in the FAC nor in every future potential contract with the City or with other government agencies, the Court finds that the FAC adequately pleads a least a plausible property interest in at least one contract.

### c.  Substantive Due Process Conclusion

The plaintiffs have failed to state a claim for deprivation of substantive due process as it relates to their liberty interests in both the right to bid on future contracts and their reputation.  The motion to dismiss these claims is GRANTED.  Plaintiffs could plead additional facts to cure the deficiencies identified in this Order. As such, the Court GRANTS LEAVE TO AMEND.

The plaintiffs have pleaded adequate facts to state a claim for deprivation of substantive due process as it relates to their property interest in at least one contract.  The motion to dismiss this portion of the claim is therefore DENIED.

### D.  Qualified Immunity

Government officials may not be held liable for civil damages under 42 U.S.C. § 1983 unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The qualified immunity analysis first asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the government

16

official violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Next, the analysis asks whether "the right was clearly established." *Id*. A right is clearly established if the state of the law at the time of the incident provided fair warning to the defendants that their conduct was unconstitutional. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (internal quotations omitted).

Defendants argue that "if the Court were to find . . . liability" here, it would not have been for violation of a clearly established right. Motion at 20. But the Court is not making any findings of liability at this stage of the proceedings. On a motion to dismiss, the Court regards all of the plaintiff's allegations as true. *Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999). While the qualified immunity may be raised on a motion to dismiss, at this stage it is often "impossible to determine based on a complaint alone that qualified immunity is warranted," making it a matter more often determined at summary judgment or at trial. *Id*.; *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004). Such is the case here. At the very least, Defendants were on notice at the time of the alleged conduct that government employers may not retaliate against contractors for exercising their First Amendment rights and that they similarly must not deprive contractors of their fundamental right to property in contracts. *See Desrochers*, 572 F.3d at 708–09 (9th Cir. 2009); *see also San Bernardino*, 825 F.2d at 1407–08. Under only Plaintiffs' facts and with no additional factual development, then, qualified immunity does not apply.

The Defendants' motion to dismiss on the grounds of qualified immunity is DENIED without prejudice.

### E.  Mandamus Relief

California Code of Civil Procedure §§ 1085 and 1094.5 prescribe mandamus relief. Traditional mandamus, under § 1085, is available "to compel the performance of an act [that] the law specifically enjoins."  Cal. Code Civ. P. § 1085(a).  Administrative mandamus, alternatively, is available for "judicial review of quasi-adjudicatory administrative action [by a] local-level agency."  *City of Santee v. Superior Court*, 228 Cal. App. 3d 713, 718 (1991).  An administrative action is "quasi-adjudicatory" if it is "made as

17

the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal . . . or officer." Cal Code. Civ. P. §1094.5(a). A hearing is required "by law" when a statute expressly requires a hearing or when one is compelled by considerations of due process. *Kirkpatrick v. City of Oceanside*, 232 Cal. App. 3d 267, 279 (1991).

### 1. Administrative Mandamus

Here, Plaintiffs seek review of the determination made at the hearing on their disqualification from the Minor Street Projects.[3] FAC at 9–10. Plaintiffs also argue that a hearing was required for due process considerations. Opp. at 21. Plaintiffs argue that Gradetech had a liberty interest in its right to have its application for the Minor Street Projects considered fairly. *Id*. In support of this notion, Plaintiffs cite to California cases finding that contractors' liberty interests are implicated when a government agency seeks to debar or suspend them for extended periods of time. *See, e.g., S. Cal. Underground Contractors, Inc. v. City of San Diego*, 108 Cal.App.4th 533, 542 (2003); *Niles Freeman Equip. v. Joseph*, 161 Cal.App.4th 765, 771 (2008). But Plaintiffs cite no examples and the Court is aware of no cases where disqualification from one particular contract triggers a liberty interest giving rise to due process protections. The Court does not find that due process concerns compelled a hearing.

Whether a hearing was expressly required is not entirely clear. The FAC alleges that the Contractor Qualification Request for the Minor Street Projects procedures specified that the hearing would be "informal" and "*not* an evidentiary hearing." FAC ¶ 27. At the same time, the procedures stated that "the Contractor may present information and argument about why it believes it is qualified to participate in the pool," and that the

---

[3] Defendants argue that, because the Minor Street Projects has already been awarded to another contractor, the issue is moot. Motion at 24. But Plaintiffs do not seek an award of the contract. Rather, the relief that Plaintiffs seek is for the Court to "reverse and set aside" the disqualification decision. Plaintiffs' concern is that the disqualification will cause other harm, such as that it could "be used by the City to support the City's debarment decision." FAC at ¶ 47. The Court accepts this allegation as true and therefore finds that the disqualification decision is not moot.

18

United States District Court
Northern District of California

"Director will consider all evidence, information and arguments submitted." *Id*. Plaintiffs also cite to the City's later letter affirming Gradetech's disqualification as evidence that administrative mandamus applies, which invites the contractor to seek judicial review under § 1094.5. FAC ¶ 37.

Read in the light most favorable to the plaintiffs, the Court FINDS that the City's procedures (as set forth in its January 30, 2019, Contractor Qualification Request and the July 1, 2019, letter affirming Gradetech's disqualification) appear to require a hearing. As such, the Court finds that administrative mandamus applies.

In administrative mandamus, the Court reviews the agency's decision to determine whether "substantial evidence" supported the hearing officer's decision. *Ogundare v. Dep't of Indus. Relations*, 214 Cal. App. 4th 822, 829 (2013). The Court presumes so unless the plaintiff meets its burden of proving otherwise. *MCM Const., Inc. v. City & Cty. of San Francisco*, 66 Capp. 4th 359, 368 (1998).

Here, Plaintiffs allege that the City lacked "substantial evidence" to disqualify it from the Minor Street Projects. Specifically, Plaintiffs state that the City "failed to follow the City's own noticed procedures for evaluating contractor submittals" for the Minor Street Projects. FAC ¶ 44. The noticed procedures included a method for the City to award or deduct a certain number of points based on whether an applicant had ever submitted a false claim. *Id*. Rather than follow that point calculation, the City outright disqualified Gradetech based on its false payroll data. *Id*. Plaintiffs also allege that the City did not give them "opportunity to present evidence." *Id*. Finally, the FAC alleges that the City "failed to give due consideration to Gradetech's strong history of successful performance with the City, and Gradetech's award winning work" while giving "undue consideration to the fact that Gradetech had filed claims and a lawsuit against the City for failing to pay it under the contract for the [Cunningham] Project." *Id*.

These allegations are sufficient to allege that the City lacked substantial evidence to disqualify Gradetech and thus state a claim for administrative mandamus. The motion to dismiss this claim is therefore DENIED.

19

## 2. Traditional Mandamus

"To obtain writ relief under Code of Civil Procedure section 1085, the petitioner must show there is no other plain, speedy, and adequate remedy; the respondent has a clear, present, and ministerial duty to act in a particular way; and the petitioner has a . . . right to performance of that duty." *Cty. of San Diego v. State of California*, 164 Cal. App. 4th 580, 593 (2008). The Court's mandamus review of the City's actions is limited to determining whether the City's actions were "arbitrary, capricious, entirely lacking in evidentiary support," or were "contrary to required legal procedures." *Marvin Lieblin, Inc. v. Shewry*, 137 Cal. App. 4th 700, 722 (2006).

The FAC alleges that Plaintiffs have exhausted all other remedies. FAC ¶ 45. As discussed above, Plaintiffs allege that Defendants had a duty to evaluate their bid "on equal terms with other applicants, and without regard to whether or not Gradetech has exercised its right to petition the Court for redress of grievances against the City in the past." FAC ¶ 43. They allege that the City's actions were arbitrary and capricious because the City did not follow its own procedures or point system, did not consider Gradetech's evidence or its successful history, and overly relied upon Gradetech's lawsuit. FAC ¶ 45. Plaintiffs also allege that the City's procedures were vague and lacked clear standards. *Id*.

These allegations are sufficient to state a claim for writ of traditional mandamus. The motion to dismiss this claim is therefore DENIED.

## IV. Conclusion

The motion to dismiss the plaintiffs' claims for First Amendment retaliation and deprivation of property under 42 U.S.C. § 1983 and their claim for a writ of mandamus is DENIED.

The motion to dismiss the plaintiffs' claim for deprivation of liberty under § 1983 is GRANTED. The plaintiffs are granted LEAVE TO AMEND that claim. If they fail to adequately amend their claim for reputational harm, they must allege some other direct, independent injury to Sam Rivinius or he will be dismissed from the case for lack of standing.

20

Plaintiffs must file an amended complaint by **April 24, 2020.** Defendants need not answer the surviving claims until a Second Amended Complaint is filed or Plaintiffs indicate that they do not intend to amend further. Plaintiffs may not add additional parties or claims without leave of the Court.

   **IT IS SO ORDERED.**

Dated:  April 3, 2020                           _____
                                                NATHANAEL M. COUSINS
                                                United States Magistrate Judge